IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| KIM VO, | ) | |
| | ) | |
| Plaintiff | ) | 1:19-cv-00084-RAL |
| | ) | |
| vs. | ) | RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| DOC SECRETARY JOHN WETZEL, | ) | |
| DEPARTMENT OF CORRECTIONS; | ) | MEMORANDUM OPINION CROSS- |
| SUPERINTENDENT LONNIE OLIVER, | ) | MOTIONS FOR SUMMARY JUDGMENT |
| SUPERINTENDENT SCI-CAMBRIDGE | ) | |
| SPRINGS; CORRECTIONS OFFICER M. | ) | |
| MCCURDY, CORRECTIONS OFFICER P. | ) | ECF NOS. 67, 72 |
| ZAKOSTELECKY, MAJOR DODDS, | ) | |
| SERGEANT M. VANTASSEL, | ) | |
| | ) | |
| Defendants | ) | |

MEMORANDUM OPINION

I.      Introduction

        Plaintiff Kim Vo (Vo) is an inmate in the custody of the Pennsylvania Department of

Corrections (DOC) at its State Correctional Institution at Cambridge Springs (SCI-Cambridge

Springs).  She commenced this action asserting federal constitutional and statutory claims

against six employees of the DOC.[1]  ECF No. 26, pp. 6–11.  She alleges that the Defendants

violated her First and Fourteenth Amendment rights when they failed to return certain property

that they seized during a search of her cell and later retaliated against her for complaining about

their conduct.  *Id*.  She seeks redress of these violations pursuant to 42 U.S.C. § 1983 and the

---

[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.  ECF Nos 13, 15.

Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, *et seq*. *Id.*, p. 7.

The six defendants named in Vo's original Complaint were John Wetzel, the Secretary of the DOC, Lonnie Oliver, SCI-Cambridge Springs Superintendent, Sergeant Van Tassel, Corrections Officer M. McCurdy, Corrections Officer P. Kostelac, and Major M. Dodds. The Court previously dismissed all claims against Wetzel with prejudice. Thereafter, Vo filed an Amended Complaint, which is her operative pleading.[2]  ECF No. 26.  The pleadings are closed, and discovery is complete.  The parties have cross-moved for summary judgment.  ECF Nos. 67, 72.  Both parties have filed concise statements of material fact and exhibits and responsive concise statements of material fact.  *See* ECF Nos. 69, 70, 72, 73, 80, 93.  The motions have been fully briefed and are ripe for disposition.  *See* ECF Nos. 68, 72, 79, 90, 91.  The Court will GRANT the Defendants' motion and DENY Vo's motion, as explained below.

II.    Background

The following facts are taken from the parties' concise statements of material fact and exhibits thereto.  *See* ECF Nos. 69, 70, 69, 70, 72, 73, 80, 93.  Disputed facts are noted.  Vo has been confined at SCI-Cambridge Springs since February 2010.  ECF No. 70-1.  Corrections Officers McCurdy and Zakostelecky worked on the second shift search team at SCI-Cambridge Springs in 2017.  ECF No. 70-6, pp. 6, 16 (Affidavit of McCurdy; Affidavit of Zakostelecky). Their duties included conducting random cell searches to ensure inmates' compliance with DOC property limits.  On September 15, 2017, McCurdy and Zakostelecky searched Vo's cell and

---

[2] The Court previously granted a motion to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 22, p. 14.  The Court dismissed the claims against Wetzel and certain other claims with prejudice and provided Vo leave to amend her remaining claims.  *Id.*  Then Vo filed her Second Amended Complaint.  *See* ECF No. 26.

identified excess property.  *Id.*, p. 6, ¶¶ 10-11.  They documented Vo's excess property on confiscated items receipts (CIRs).  *See* ECF No. 70-6, pp. 8–14.  On September 26, 2017, officers brought Vo to the security office where they had displayed all her confiscated items. ECF No. 70-6, p. 6, ¶ 12.  McCurdy and Zakostelecky asked Vo to review her property and decide what to keep and discard.  *Id.*, p. 6, ¶ 13.  Once they completed this review, Vo was returned to her cell with the property that fit into a footlocker and two record center boxes and left the excess property behind.  *Id.*, ¶ 14.  According to McCurdy, "[a]ll items that were to be discarded were specifically identified by inmate Vo."  *Id.*, p. 6, ¶ 14.  Vo disputes that she had a say in this.  Following another review of her property on October 26, 2017, McCurdy and Zakostelecky issued Vo another CIR.  *Id.*, p. 6. ¶ 15; *id.*, p. 14.  Vo refused to sign her CIRs when asked on November 2, 2017.  *Id.*, p. 6, ¶ 16.  Since November 2, 2021, neither McCurdy nor Zakostelecky has had any interactions with Vo regarding her property.  ECF No. 70-6, p. 7, ¶ 26, p. 17, ¶ 21.

All inmates are required to comply with the property limits specified in DOC policy DC-ADM 815, Personal Property, State Issued Items, and Commissary/Outside Purchases.  *See* ECF No. 70-4.  The provision entitled "Accumulation of Items – Cell Content Limitations" states, "An inmate in general population is permitted storage space equal to four records center boxes.  This space may consist of four records center boxes or one footlocker and two records center boxes."  DC-ADM 815, § 3(B)(1).  Inmates may have specified kinds of personal property, including "personal property items listed on his/her DC-153, Inmate Personal Property Inventory Form."  DC-ADM, § 3(B)(5)(a).  The policy also states, "An inmate may not exceed the property limits established by the Department.  Excess property, as determined by the Facility Manager/designee, may be shipped out at the inmate's expense or destroyed."  DC-

ADM 815, § 3(B)(12).  Consistent with this provision, the policy's definition of contraband includes, "personal property in excess of the allowable limits."  DC-ADM 815, § 3(C)(1)(t).

McCurdy and Zakostelecky knew that Vo had a portfolio that contained "oversized artwork," but this portfolio was not part of their property review, and they did not direct its confiscation.  *Id.*, p. 6, ¶¶ 18, 19, p. 17, ¶¶ 17, 18.  According to them, the property limits imposed by DOC policy did not include Vo's portfolio.  Another officer, apparently unknown to them, confiscated this portfolio because Vo could not validate its source by, for example, proving that she had bought it.[3]  *Id.*, p. 7, ¶ 20-21, p. 17, ¶¶ 19-20.  Indeed, the definition of contraband in DOC policy includes "personal items or valuables whose ownership cannot be determined."  DC-ADM 815, § 3(C)(1)(r).

During Vo's property review, McCurdy and other officers confiscated a set of Buddhist prayer beads made of wooden-craft beads strung onto a piece of floss.[4]  ECF No. 70-6, p. 7, ¶¶ 22, 24 (McCurdy Affidavit).  McCurdy knew that DOC policy permitted the possession of religious items purchased through a DOC-approved vendor.  *Id.*, p. 7, ¶¶ 23-24.  McCurdy confiscated Vo's prayer beads because they were homemade.  *Id.*, p. 7, ¶ 25.

Religious inmates may possess sacred objects as long as those objects are listed in the Religious Articles Catalog.  DC-ADM 819, § 3(A)(1)(a).  However, "[h]omemade or other unauthorized sacred objects are not permitted and shall be confiscated."  DC-ADM 819, § 3(A)(1)(j).  Violation of the policy may lead to corrections officials "destroy[ing]" the object

---

[3] A "Portfolio in Property" is listed on the CIR from October 26, 2017, and its disposition is given as "Returned through Sgt. Vantassel, still in possession of security."  ECF No. 70-6, p. 17.

[4] A CIR from September 15, 2017, shows that officers confiscated 56 beads on a piece of floss and then destroyed them.  ECF No. 70-6, p. 9.  A CIR from October 26, 2017, shows that "Buddhist Beads" were confiscated.  *Id.*, p. 14.

"or sen[ding] [it] home at the inmate's expense."  DC-ADM 819, § 3(A)(1)(q).  Prayer beads are

permitted if purchased through the Religious Articles Catalog.  DC-ADM 819, § 3(A)(3); ECF

No. 70-5, pp. 38, 47-48.  One item listed for Buddhists in the catalog is "Tulsi Mala," which

consists of 108 beads strung together.  *Id.*  It costs $10.00, plus $6.95 for shipping.  *Id.*

Vo filed Grievance No. 699770 on September 25, 2017, ten days after the confiscation of

her prayer beads.  ECF No. 70-3, pp. 2-3.   The reviewing officer rejected this grievance because

she mistakenly believed Vo was grieving seizures of her property from 2010 and 2011, and thus

viewed her grievance as untimely.  *Id.*, p. 4.  Vo resubmitted this grievance on October 10, 2017,

and it was again denied.  *Id.*, pp. 5-6.  The officer noted that on October 26, 2017, Vo was called

to the security office and given the maximum allowed property that would fit in one footlocker

and two record center boxes.  *Id.*, p. 26.  Vo filed another grievance, No. 706718, on

November 8, 2017, seeking the return of her property and for the DOC to "make [her] whole" for

damage to one of her bins.  *Id.*, pp. 28-29.  Grievance No. 706718 was rejected, resubmitted,

denied, appealed to the facility manager, denied, appealed to final review with the Secretary's

Office of Inmate Grievance Appeals, and denied.  *Id.*, pp. 39–66.

III.     Standard of Review

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under this standard "the mere

existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine

issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  A

disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of

the case under applicable substantive law.  *See Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party.  *See Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  Instead, once the movant satisfies his or her burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party may also rely on the lack of evidence to support an essential element of the opposing party's claim as a basis for the entry of summary judgment because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  *See also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

When considering a motion in a *pro se* plaintiff's case, a court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name."  *Holley v. Dep't of Veteran's Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999).  On a motion for summary judgment, however, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil

Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted). Put another way, just because a non-moving party is proceeding *pro se*, he is not relieved of their "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id*. (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz*, 2012 WL 4343176, at *1 (W.D. Pa. Sept. 21, 2012).

The Court also may consider evidentiary materials in the record beyond the parties' concise statements and responses. *See Scalia v. WPN Corp.*, 417 F. Supp. 3d 658, 661 (W.D. Pa. 2019) ("rely[ing] on the record as a whole to determine the applicable material facts"). *See also King v. Pennsylvania Dep't of Corr.*, 2020 WL 2897019, at *1 (W.D. Pa. June 1, 2020). For example, the Court may consider the factual statements in Vo's verified Complaint, but only to the extent they are based upon her personal knowledge. *Jackson v. Armel*, 2020 WL 2104748, at *5 (W.D. Pa. May 1, 2020) (citing *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion)). *See also Brooks v. Kyler*, 204 F.3d 102, 108 n.7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from [a pro se prisoner] at the summary judgment phase of the proceedings"); *Boomer v. Lewis*, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").

IV.     Analysis

A.  Exhaustion of Administrative Remedies

The Defendants argue that Vo failed to exhaust her available administrative remedies through the DOC's grievance system as to her claims against Defendants Dodds, Oliver, and Van Tassel, her Equal Protection claim, and her request for money damages.  ECF No. 68, p. 6.  The Court agrees that the Defendants have established their exhaustion defense and entitlement to judgment as a matter of law on Vo's claims against Dodds and Oliver and Vo's Equal Protection claim.  The Court finds, however, that Defendants have failed to establish their exhaustion defense as to the claims against Van Tassel or Vo's request for money damages.

Proper exhaustion under the PLRA requires that an inmate "complete the administrative review process in accordance with the applicable procedural rules."  *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford*, 548 U.S. at 88).  Individual prisons provide these procedural rules.  *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004) (determining whether "a prisoner has 'properly' exhausted a claim…is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances").  Thus, a court determines whether a plaintiff has properly exhausted administrative remedies according to the procedures and rules adopted by the plaintiff's correctional institution.  *Spruill*, 372 F.3d at 230-31 ("prison grievance procedures supply the yardstick for measuring procedural default.").  The Inmate Grievance Policy, DC-ADM 804, provides the relevant procedures for grievances not connected with a misconduct citation and is relevant here.  *See McClain v. Alveriaz*, 2009 WL 3467836, at *6 (E.D. Pa. Oct. 26, 2009) (citations omitted).

The DC-ADM 804 grievance system consists of three separate stages: initial review, appeal, and final review.  First, within fifteen days of the incident, the prisoner must submit a written grievance for review by the facility manager or the regional grievance coordinator, who, in turn, must respond in writing within fifteen business days.  Second, if the grievance is denied, the inmate must submit a written appeal to the Facility Manager within fifteen working days, and again the inmate is to receive a written response within fifteen working days.  Finally, if the inmate remains dissatisfied following this second level outcome, he must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals (SOIGA) within fifteen working days, and then the inmate will receive a final determination in writing within thirty days.[5]  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305-06 (3d Cir. 2020).  An inmate has not properly exhausted the grievance until SOIGA issues its final determination.

Failure to exhaust administrative remedies under the PLRA is an affirmative defense that defendants must plead and prove.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  In support of the defense, the Defendants submitted an affidavit from Keri Moore, Assistant Chief Grievance Officer at SOIGA.  ECF No. 70-2.  She is a custodian of the DOC's records of inmate grievances which are kept in the ordinary course of business.  ECF No. 70-2, ¶ 16.  Moore reviewed SOIGA's records and found that since October 2017, Vo had only appealed one grievance to final review with SOIGA—Grievance No. 706718.  ECF No. 70-2, ¶ 19.  SOIGA considered this grievance on the merits and denied relief to Vo.  ECF No. 70-3, p. 66.  Thus, any of her legal claims with factual bases not fairly presented by this grievance were not properly exhausted, and thus are subject to dismissal pursuant to the Defendants' motion.  *Muhammad v. Sec'y Pa. Dep't*

---

[5] Policy Statement: Inmate Grievance System: DC-ADM 804, effective May 1, 2015, is available at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf.

*of Corr.*, 621 Fed. Appx. 725, 727 (3d Cir. 2015).  The Defendants argue that although Vo

completed all three steps in the grievance process relative to Grievance No. 706718, she

nevertheless failed to exhaust her claims against three Defendants—Van Tassel, Dodds, and

Oliver—because Grievance No. 706718 did not name them.[6]  ECF No. 68, p. 7.

The PLRA itself does not have a "name all defendants" requirement.  *Byrd v. Shannon*,

715 F.3d 117, 127 (3d Cir. 2013) (citing *Jones*, 549 U.S. at 217).  But Section 11(d) of the

DOC's grievance policy states that the inmate "shall identify individuals directly involved in the

events."  *See Green v. Maxa*, 2020 WL 1249205, at *5 (W.D. Pa. Mar. 16, 2020); *Jackson v.

Carter*, 813 Fed. Appx. 820, 823 (3d Cir. 2020).  Courts require that "in the absence of any

justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a

failure to properly exhaust his administrative remedies under the PLRA."  *Williams v. Pa. Dep't

of Corr.*, 146 Fed. Appx. 554, 557 (3d Cir. 2005).  Such a procedural default can be excused,

however, if prison administrators respond to the grievance "by identifying the unidentified

persons and acknowledging that they were fairly within the compass of the prisoner's

grievance."  *Spruill*, 372 F.3d at 234-35.  Applying *Spruill*, courts have repeatedly found prison

officials to have excused an identification default when their grievance responses acknowledged

involvement of the defendants.  *See Williams v. Beard*, 482 F.3d 637, 639-40 (3d Cir. 2007);

*Robinson v. Johnson*, 343 Fed. Appx. 778, 782 (3d Cir. 2009); *Tenon v. Dreibelbis*, 606 Fed.

Appx. 681, 687 n.5 (3d Cir. 2015).  This is because "[t]he primary purpose of a grievance is to

alert prison officials to a problem, not to provide personal notice to a particular official that he

---

[6] The Defendants do not make this argument as to Defendants McCurdy and Zakostelecky.  Their brief
acknowledges that "the names of Corrections Defendants McCurdy and Zakostelecky appear in some of the
documents attached to this grievance and could be considered 'fairly within the compass of the prisoner's grievance
….'"  ECF No. 68, p. 9.  McCurdy's and Zakosteleky's names also appear on CIRs from September 15, 2017, and
October 26, 2017, which Vo attached to her initial Grievance No. 706718.  ECF No. 70-3, pp. 43, 47–51.

may be sued." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (quoting *Jones*, 549 U.S. at 219).  But where the inmate does not identify a defendant in the grievance and there is no indication in the record that prison administrators knew that the defendant was involved in the conduct challenged in the grievance, the prisoner has failed to exhaust administrative remedies as to that defendant.  *Byrd,* 715 F.3d at 127; *Johnson v. Townsend*, 314 Fed. Appx. 436, 442-43 (3d Cir. 2008).

Dodds' name and Oliver's name do not appear in Vo's initial grievance or the attached documents.  And there is no evidence that a DOC official acknowledged their involvement in a grievance response.  Vo argues that when she wrote, "the search team," on her grievance, prison officials knew or should have understood whom she meant.  *See* ECF No. 90, p. 7.  But review of Vo's initial grievances does not show this phrase.  And while the initial review response to Grievance No. 706718 referenced "Security Office," "Security staff," *see* ECF No. 70-3, p. 62, and the Facility Manager's appeal response referred to "the Search Team" and "Security Office," *see id.*, p. 65, these references are not specific enough on this record to acknowledge the involvement of Oliver or Dodds or any other person.  Vo notes in her appeal of Grievance No. 706718 to the facility manager that she told Superintendent Oliver about the damage to her floss box and about the return of some of her items.  ECF No. 70-3, p. 64.  But this was not included in Vo's initial grievance, and thus cannot be considered.  Therefore, Dodds and Oliver are entitled to judgment in their favor based on Vo's failure to comply with DC-ADM 804's requirement that prisoners identify those involved.

That said, a genuine dispute of material fact exists concerning whether Van Tassel was named in a confiscation receipt that Vo attached to her grievance.  Vo's copy of this CIR is blurry and greyed-out with possible pen marks in a key area.  ECF No. 70-2, p. 43.  But the

Defendants' copy of the same CIR is legible and states regarding her art portfolio, "Returned through Sgt. Vantassel, still in possession of security." ECF No. 70-6, p. 14. Viewing the evidence in the light most favorable to Vo, it appears that the copy of the CIR produced by the DOC is the one Vo submitted with her initial grievance and that this CIR placed prison officials on notice that Van Tassel participated in the alleged improper handling of her property. This conclusion aligns with the Defendants' acknowledgment that Vo had identified McCurdy and Zakostelecky through CIRs attached to her grievance.

The Defendants also argue that Vo has failed to exhaust her equal protection claim for the confiscation of her art portfolio because she failed to mention an equal protection violation in her grievance and failed to state, "that there were other inmates at SCI-Cambridge Springs who were treated differently from her with respect to inmate property and, particularly, with respect to her portfolio." ECF No. 68, p. 10. With the qualification discussed below, the Court agrees.

Regarding the facts an inmate must include in a grievance in a DOC grievance, the DC-ADM 804 provides:

> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
> a. The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
> b. The inmate shall identify individuals directly involved in the event(s).
> c. The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.

DC-ADM 804, § 1(A)(11).

"Restated slightly, an inmate's grievance must include facts sufficient to place prison officials on fair notice of the claim or claims to be investigated…. This analysis focuses on the facts presented by the grievance, not whether the inmate correctly labeled his claim or claims." *Jackson v. O'Brien*, 2021 WL 5087922, at *5 (W.D. Pa. Nov. 2, 2021). This is not a high bar. This assessment is framed in part by the elements of the claim at issue. To state a class of one equal protection claim, a plaintiff must allege that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Mosca v. Cole*, 217 Fed. Appx. 158, 164 (3d Cir. 2007) (citing *Hill v. Borough of Kutztown*, 455 F.3d 255, 239 (3d Cir. 2006)).

Although Vo's grievance stated that officers took her property, she did not raise facts that she was treated differently than another inmate. She stated that officers had violated the "grandfathered property" provision of the DC-ADM 815 inmate property policy, not her equal protection rights. Under these circumstances, Vo failed to present facts in her grievance which would alert a reasonable DOC official to an issue of disparate treatment. *See Hart v. Whalen*, 2011 WL 1099280, at *8–14 (M.D. Pa. Feb. 7, 2011) (failure to exhaust equal protection claim when facts not included in initial grievance). Thus, she failed to exhaust her equal protection claim. *See also McKeithan v. Kerestes*, 2014 WL 3734569, *9 (M.D. Pa. July 28, 2014) ("although McKeithan was indisputably a frequent and prolific griever while housed at SCI-Mahanoy, he never filed a single grievance alleging that as an inmate on RRL at the prison, he had been denied the same privileges as other prisoners on the RRL who were housed at other Pennsylvania prisons"). The Defendants are entitled to summary judgment on the equal protection claim.

The Defendants also argue that Vo cannot pursue compensatory or punitive damages because she failed to request monetary relief in her grievance.  ECF No. 68, pp. 10-11.  The Court rejects this argument.  The version of DC-ADM 804 in effect when Vo filed her initial grievance specifically stated, "If the inmate desires compensation or other legal relief normally available from a court, *the inmate must request the specific relief sought in his/her initial grievance*."  DC-ADM 804, § 1(A)(11)(d) (emphasis added).  This command mandates that an inmate request financial compensation in her initial grievance if she intends to demand money damages in a subsequent lawsuit.  *See Wright v. Sauers*, 729 Fed. Appx. 225, 227 (3d Cir. 2018) (citations omitted); *Hobson v. Tiller*, 2021 WL 2191282, at *7-8 (W.D. Pa. May 6, 2021).  Thus, "an inmate procedurally defaults any claim for monetary relief if he did not seek such relief in his grievance" (even if the inmate appeals the grievance to final review).  *Newsome v. Teagarden*, 2021 WL 1176102, at *8 (W.D. Pa. Mar. 29, 2021) (only relief requested was preservation of video evidence, not money).  *See also Sanders v. Beard*, 2013 WL 1703582, at *6 (M.D. Pa. Apr 19, 2013) (same).  However, a request for monetary relief in a grievance need not be so precise that it "sets forth a specific dollar amount" so long as a request for monetary compensation is made.  *Sides v. Pennsylvania Dep't of Corr.*, 2020 WL 1493549, at *7 (W.D. Pa. Mar. 27, 2020).  *See also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process.").

Defendants are right that Vo's grievance made requests that appear analogous to equitable relief: she asked in her resubmitted initial grievance "for the return of my items …

14

confiscated from me" and specified certain items.[7]  ECF No. 70-3, p. 40.  But a reasonable DOC official should have understood that Vo was seeking financial compensation by her statement, "I am seeking for DOC made me whole for the damaged of my floss box (sic) …."  ECF No. 70-3, p. 40.  A reasonable, plain meaning definition of "make whole" means financial compensation. Further, the damaged bin could not be restored to its original state.  Therefore, Vo has not defaulted a claim for money damages on this basis.

In addition, the Court also rejects the Defendants' contention that Vo's compensatory damages should be limited to the amount of damage to the bin.  *See* ECF No. 68, p. 11 ("Thus, because Plaintiff has only requested the return of her property and *the value of a bin* that was allegedly damaged, she is precluded from seeking any *further* compensatory or punitive damages in the event any claims survive the instant motion.").  DOC policy requires only that an inmate who seeks financial compensation include that request in the grievance, not that the inmate request a specific dollar amount.  *See* DC-ADM 804, § 1(A)(11)(d).  The Court cannot on this basis limit Vo's request for compensatory damages because the PLRA only requires that inmates comply with the terms of their prison's available administrative grievance process.  *See Sides v. Pennsylvania Dep't of Corr.*, 2020 WL 1493549, at *7 (W.D. Pa. Mar. 27, 2020) (grievance need not "set[ ] forth a specific dollar amount").  Vo has done so as to her claim for money damages.  In the final analysis, however, the preservation of Vo's request for money damages is irrelevant because her each of her substantive claims fails based on her failure to exhaust administrative remedies or based on the insufficiency of the record to support the claim.

---

[7] Vo submitted this grievance on November 8, 2017, and after it was rejected for ostensible noncompliance with prison rules, she resubmitted it on December 4, 2017.  ECF No. 70-3, pp. 28-29, 39–41.

B.  Retaliation Claim

The Court agrees with the Defendants that Vo has failed to demonstrate a genuine issue of material fact as to her retaliation claim because the record does not support that McCurdy and Zakostelecky knew of her protected conduct.  ECF No. 68, p. 15-16.  And even if Vo had produced evidence to support a prima facie case, the Defendants have demonstrated that they would have taken the same actions absent any alleged retaliatory motive.

To support a retaliation claim, a prisoner must produce evidence that (1) she engaged in protected conduct; (2) prison officials took an adverse action against the plaintiff that was "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) the existence of "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000) (alteration in original)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).  After her property was first confiscated on September 15, 2017, Vo engaged in protected activity when she filed Grievance No. 699770 on September 25, 2017.  ECF No. 70-3, pp. 2-3.  *See Mitchell*, 318 F.3d at 530.

Next, Vo must show that the Defendants took an adverse action against her.  An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights.  *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).  This is an objective inquiry.  *See Bistrian v.* Levi, 696 F.3d 352, 376 (3d Cir. 2012).  This requirement is not especially demanding.  "[U]nless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury."  *Id*. (citing *Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir. 2002)).  Here, the summary judgment record supports Vo's argument that she experienced an adverse action because at her

property review the day after she filed her grievance, McCurdy and Zakostelecky returned only some of her property and discarded the rest.   ECF No. 70-6, p. 6, ¶¶ 12–14.  Having one's property discarded would discourage a person of ordinary firmness from engaging in further constitutionally protected activity.  *See Jackson v. Carter*, 813 Fed. Appx. 820, 825 (3d Cir. 2020) (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) ("discarding an inmate's personal and legal property could be considered an 'adverse action.'").

Next, the Court must determine whether the record includes evidence sufficient to allow a reasonable jury to find that one or more of the Defendants, in fact, confiscated or discarded Vo's property.   In other words, the question is whether Vo has met her burden of producing evidence to support the personal involvement of each Defendant.  As noted, the Court previously dismissed the claims against Secretary Wetzel.  The Defendants now argue that the record does not support the personal involvement of Superintendent Oliver or Dodds.  ECF No. 68, pp. 11–14.

A defendant in a § 1983 action "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *Saisi v. Murray*, 822 Fed. Appx. 47, 48 (3d Cir. 2020) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)).  It is the plaintiff's burden to "show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights."  *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. Sept. 14, 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)).  Allegations that broadly implicate multiple defendants without delineating individual conduct are legally insufficient.  *See Van Tassel v. Piccione*, 608 Fed. Appx. 66, 69-70 (3d Cir. 2015).

There is no evidence that Oliver or Dodds participated in or directed the confiscation or destruction of Vo's property.  The record only supports that Van Tassel directed McCurdy and Zakostelecky on what to confiscate and withhold on September 15, 2017.  ECF No. 26, p. 4. (verified complaint).  But this took place before Vo's protected activity of filing a grievance. Thus, Van Tassel's actions could not have been motivated by Vo's protected activity. Van Tassel is, therefore, entitled to judgment in her favor.  *See Booth v. King*, 228 Fed. Appx. 167, 172 (3d Cir. 2007) (prisoner must at least produce evidence showing that the alleged retaliation occurred after defendants knew of prisoners constitutionally protected activity). Further, Vo contends that Dodds was involved, but no record evidence supports what dates Dodds participated in the property review.  ECF No. 26, p. 7.  Additionally, a comment that Dodds made in April 2019 cannot support the adverse action element.  *See Green v. Wetzel*, 2019 WL 1426955, at *8 (W.D. Pa. Mar. 29, 2019) ("Because verbal threats and comments are not adverse actions, Santos' sarcastic comments during Plaintiff's meeting are not actionable") (citing *Chruby v. Kowaleski*, 534 Fed. Appx. 156, 161 (3d Cir. 2013).  Therefore, Dodds is also entitled to judgment. [8]

Although the record supports that McCurdy and Zakostelecky took the adverse action, it does not support a finding that they did so with a retaliatory motive.  Vo has produced no direct evidence of retaliatory motive or animus on their part.  Even so, retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of antagonism coupled with timing that suggests a causal link.  *Id*. (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267

---

[8] The Court also concludes that no record evidence supports the personal involvement of Oliver, Dodds, or Van Tassel in any of Vo's other claims, so summary judgment on this basis will be entered in their favor on all claims.

(3d Cir. 2007)).  And "'[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.'"  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).

One day after Vo filed her grievance, McCurdy and Zakostelecky held her property review and refused to return many of her possessions.  Further, McCurdy and Zakostelecky confiscated her property again on October 26, 2017, and returned only some of it by November 2, 2017, discarding the rest.  Assuming McCurdy and Zakostelecky were aware of Vo's grievance, the close temporal proximity between her protected activity of filing the grievance and the subsequent discarding of her property would support an inference that they acted with retaliatory motive.  But a court may not infer retaliatory motive "absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity."  *Griffin-El v. Beard*, 2013 WL 228098, at *5 (E.D. Pa. Jan. 22, 2013) (citing *Laskaris v. Thornburgh*, 733 F.2d 260, 265 (3d Cir. 1984)).  For this reason, Vo's retaliation claim fails.  Here, both Defendants attested in their affidavits that they were unaware of Vo's grievances or complaints while they were conducting her property review that fall, and they denied retaliating against her.  *See* ECF No. 70-6, p. 7, ¶¶ 17, 27 (McCurdy Affidavit); ECF No. 70-6, p. 17, ¶¶ 16, 22 (Zakostelecky Affidavit).  Vo has produced no evidence to support a contrary finding.  This defeats her retaliation claim.

Furthermore, even if the record had supported McCurdy and Zakostelecky's knowledge sufficient to support the final element, Vo's claim would still fail because the Defendants have demonstrated that they would have taken the same action absent any retaliatory motive and for legitimate penological reasons.  "If a prisoner establishes a *prima facie* case of retaliation, the

burden shifts to prison officials to show, by a preponderance of the evidence, that 'they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.'" *See Cooper v. Garman*, 2021 WL 4033113, at *8 (M.D. Pa. Sept. 3, 2021) (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)). Put differently, "[a] defendant may defeat the claim of retaliation by showing that [he] would have taken the same action even if the plaintiff had not engaged in the protected activity." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). McCurdy and Zakostelecky's decisions to confiscate Vo's property and discard some were consistent with and mandated by DOC policies that served legitimate penological interests. DC-ADM 815 restricts the volume of property an inmate may possess. McCurdy and Zakostelecky acted pursuant to this policy and the legitimate penological interests it serves. Similarly, DC-ADM 819 prohibits the possession of homemade religious objects. McCurdy's and Zakostelecky's actions to limit Vo's property and discard her homemade Buddhist prayer beads were fully supported by this policy.

This, however, does not conclusively establish the same decision defense. Upon such a showing, the burden shifts back to the plaintiff to (1) produce "other evidence" of the defendant's retaliatory motive, and (2) demonstrate that the prisoner's violation of prison policy was "not so 'clear and overt'" that the court can conclude that the defendant would have taken the same action despite this evidence. *Watson*, 834 F.3d at 426. If the plaintiff can do this, the burden of proof would revert to the defendant, and the entry of summary judgment for the defendant would be inappropriate. *See also Carter v. Slater*, 2021 WL 5605289, at *7 (W.D. Pa. Nov. 30, 2021). Here, Vo has presented no other evidence of retaliatory motive, and it is undisputed that she violated prison policies regarding the volume of property and the possession

20

of homemade religious objects.[9]  Thus, she has failed to show that the relevant DOC policies

were pretextual reasons covering for retaliation.  The same decision defense entitles McCurdy

and Zakostelecky to summary judgment on Vo's retaliation claims.

C.  Free Exercise of Religion

Vo asserts that the Defendants violated her rights protected by the Free Exercise Clause

of the First Amendment when they confiscated a string of Buddhist prayer beads during her

property review.  McCurdy confiscated the prayer beads because she knew that DOC policy

prohibited handmade religious items.  *See* ECF No. 70-6, p. 7, ¶¶ 22–25 (McCurdy Affidavit).

The Defendants contend that there was no First Amendment violation because officials

confiscated her prayer beads pursuant to DOC policy prohibiting handmade religious items.  *See*

ECF No. 68, p. 21.[10]  *See also* DC-ADM 819, § 3(A)(1)(j).

The Free Exercise Clause of the First Amendment prohibits prison officials from denying

an inmate "a reasonable opportunity of pursuing his faith."  *Noble v. Wetzel*, 2020 WL 3211893,

at *5 (W.D. Pa. May 11, 2020) (quoting *Cruz v. Beto*, 405 U.S. 319, 322, 322 n.2 (1972) (per

curiam)).  Vo has met the first requirement for a free exercise claim because the record includes

---

[9] Vo contends that she should have been permitted to keep her property, including the art portfolio and prayer beads, in accordance with a provision of DC-ADM 815 (the "grandfathered property" provision), which states:

> a. An inmate will be permitted to keep no-longer permitted items, as long as the item(s) were noted on the inmate's DC-153, Personal Property Inventory Form as of the effective date of the previous DC-ADM 815, dated May 12, 2008.

> b. When an inmate transfers to a facility that does not permit an item previously approved at another facility, the inmate will be permitted to keep the item, as long as the item is noted on the inmate's DC-153 as noted above…

DC-ADM 815, § 2(A)(6)(a-b).  But Vo's earliest personal property inventory sheets in the record are from 2010, and DC-ADM 815 still imposes an overall property limit that she violated.

[10] DOC policy includes in its definition of contraband "any article specifically prohibited by…Department policy, or regulation."  DC-ADM 815, § 3(C)(1)(z).  As DC-ADM 819 prohibits homemade religious items, DOC policy treats Vo's homemade prayer beads as contraband.

evidence that she has a belief in using her Buddhist prayer beads that is "both sincerely held and religious in nature." *Heleva v. Kramer*, 214 Fed. Appx. 244, 246 (3d Cir. 2007) (quoting *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc)).  Therefore, Vo "has a constitutionally protected interest upon which the prison administration may not unreasonably infringe." *DeHart*, 227 F.3d at 52.

A prison regulation that "impinges on inmates' constitutional rights" is "valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).  A four-part test applies: (1) whether the regulation or practice bears a "valid, rational connection" to a legitimate and neutral governmental objective; (2) whether prisoners have alternative ways of exercising the circumscribed right; (3) "[what] impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether alternatives exist that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.  *See id.*, at 89-90.  *See also Fraise v. Terhune*, 283 F.3d 506, 513-14 (3d Cir. 2002).

Although the record concerning these factors is not especially well-developed, it does established the reasonableness of the regulation at issue.  The prohibition on handmade religious objects in DC-ADM 819, § 3(A)(1)(j) is neutral because it applies to inmates regardless of religious affiliation or belief.  *See* ECF No. 70-5.  This regulation serves the legitimate governmental interest of security because handmade religious objects could disguise contraband or be used as a weapon.  *See Higgins v. Burroughs*, 1988 WL 33884, at *3–5 (E.D. Pa. Mar. 31, 1988), *aff'd*, 862 F.2d 308 (3d Cir. 1988) (evidence in the record established that rosary beads could hide contraband and be used as a weapon in the prison's visiting area).  As an alternative,

prisoners may purchase religious objects from the DOC-approved catalogue at reasonable prices. Relevant to Vo, approved Buddhist prayer beads were available for purchase at as cost of $10.00, plus shipping.  Allowing inmates to fashion their own religious objects would require guards to devote additional time to inspect the homemade objects for contraband, hidden containers, and their potential use as a weapon.  And the record includes no evidence that alternatives to the policy exist that would accommodate prisoners' rights at a de minimis cost to valid penological interests.  For these reasons, DC-ADM 819's prohibition on the possession of handmade religious objects bears a reasonable relationship to a legitimate penological interest as applied to Vo.  Consequently, the Defendants are entitled to summary judgment on Vo's First Amendment Free Exercise claim.

Vo also asserts a RLUIPA claim based on essentially the same evidence she proffered in support of her Free Exercise claim.  ECF No. 26, p. 7.  She asserts that the Defendants violated her rights under this statute when they confiscated and destroyed her prayer beads.  *Id.*, p. 8.  The Defendants' briefs do not separately address RLUIPA.  Still, Defendants have requested summary judgment on all pending claims, and, while the elements of a RLUIPA claim differ from a Free Exercise claim, the two are significantly related.  The Court will, therefore, reach the merits of Vo's RLUIPA claim.

According to the RLUIPA, "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution…even if the burden results from a rule of general applicability, unless the government demonstrates that the burden…is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that… interest."  42 U.S.C. § 2000cc-1(a).  If the plaintiff "produces *prima facie* evidence to support a claim…the government shall bear the burden of persuasion on any element of the

claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion."  42 U.S.C. § 2000cc–2(b).

"Under RLUIPA, [the plaintiff] bears the 'initial burden' of showing that (1) [s]he has a sincerely held religious belief…, and (2) the prison substantially burdened the exercise of his belief…."  *Watson v. Christo*, 837 Fed. Appx. 877, 880 n. 6 (3d Cir. 2020) (citing *Holt v. Hobbs*, 574 U.S. 352, 360-61); 42 U.S.C. § 2000cc-1(a)).  As explained above, *see supra*, p. 21, Vo has demonstrated a sincere religious belief regarding the use of her Buddhist prayer beads. However, the record does not support a finding that the Defendants substantially burdened her religious exercise.

The RLUIPA does not define substantial burden.  Courts have recognized that "a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit;" or "2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs."  *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).  Under the RLUIPA, "Congress defined 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'"  *Holt v. Hobbs*, 574 U.S. 352, 358 (2015) (quoting § 2000cc-5(7)(A)).[11]  Indeed, the "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion."  *Cutter v. Wilkinson*, 544 U.S.

---

[11] Under RLUIPA it is error to conclude the government has not substantially burdened a prisoner's religion because of "the availability of alternative means of practicing religion."  *Holt*, 574 U.S. at 361-62.  "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise…, not whether the RLUIPA claimant is able to engage in other forms of religious exercise."  *Id.*

709, 725 n.13 (2005).  Still, the RLUIPA's scope is not endless, because the statute's text

commands that not any or all burdens on religion are covered, only "substantial" ones.  *See*

*Washington*, 497 F.3d at 281 (3d Cir. 2007) (citing *Civil Liberties for Urban Believers v. City of*

*Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) (stating, in the land use context, that "[a]pplication

of the substantial burden provision to a regulation inhibiting or constraining *any* religious

exercise…would render meaningless the word 'substantial'")).

Here, Vo's RLUIPA claim must be dismissed because the Defendants have not

substantially burdened her religion.  Vo is only prohibited from possessing *homemade* prayer

beads.  She may purchase prayer beads at minimal cost from the DOC-approved religious

articles catalog.  Moreover, she has not alleged that her religious beliefs compel her to make her

own prayer beads.  Vo's preference for her homemade prayer beads does not make their absence

a substantial burden.  Because she may still possess prayer beads that comply with DOC policy,

her situation is unlike other cases in which courts have found a substantial burden.  *See Banks v.*

*Sec'y Pa. Dep't Corr.*, 601 Fed. Appx. 101, 104 (3d Cir. 2015) (ongoing refusal to provide

"special foods and diets" to indigent Muslim inmates for the celebration of major religious

holidays amounted to substantial burden); *Lovelace v. Lee*, 472 F.3d 174, 187–89 (4th Cir. 2006)

(disciplinary policy excluding inmate from special Ramadan meals during nearly the entire holy

month and, during twenty-four of the thirty days of Ramadan, excluding inmate from

participating in daily group prayers constituted substantial burden).

The RLUIPA does not "elevate accommodation of religious observances over an

institution's need to maintain order and safety."  *Cutter*, 544 U.S. at 722.  Courts owe "due

deference to the experience and expertise of prison and jail administrators in establishing

necessary regulations and procedures to maintain good order, security [,] and discipline,

consistent with consideration of costs and limited resources." *Id*. at 723 (citation omitted). "[A]lthough RLUIPA provides substantial protection for the religious exercise of institutionalized persons, it also affords prison officials ample ability to maintain security." *Holt v. Hobbs*, 574 U.S. 352, 369 (2015).  Without a substantial burden, Vo's claim under the RLUIPA cannot proceed.[12]

V.      Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment at ECF No. 67 is GRANTED, and Vo's motion for summary judgment at ECF No. 72 is DENIED.

An appropriate order follows.

DATED this 31st day of December 2021.

BY THE COURT:

RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE

---

[12] The Court does not reach the Defendants' argument that 42 U.S.C. § 1997e(e) precludes compensatory damages because the Defendants have otherwise shown their entitlement to judgment as a matter of law.  ECF No. 68, pp. 11-12.